STATE OF NORTH CAROLINA

GUILFORD COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 5623

FILED

2020 JUN 25 A 11: 16

GUILFORD CO.,C.S.C.

BY_____ SA

WOODMONT WEST MARKET, LLC, )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )          COMPLAINT
                                        )
THE CINCINNATI INSURANCE                )
COMPANY,                                )
                                        )
            Defendant.                  )

Plaintiff Woodmont West Market, LLC ("Plaintiff", "Woodmont", or

"Insured"), complaining of Defendant The Cincinnati Insurance Company ("Cincinnati"

or "Insurer"), alleges and says as follows:

**PARTIES**

1.      Woodmont is a limited liability company formed and existing

under the laws of the State of North Carolina, with registered office at 1122 Oberlin

Road, Raleigh, North Carolina 27605, and with a principal place of business at 4653

West Market Street, Greensboro, North Carolina 27407.

2.      Insurer is a corporation duly organized and existing under the laws

of the State of Ohio with its principal place of business located at 6200 South Gilmore

Road, Fairfield, Ohio, and at all times relevant hereto was duly authorized by the North

Carolina Department of Insurance to engage in the business of issuing commercial

property insurance policies in North Carolina.

## JURISDICTION and VENUE

3. This Court has jurisdiction over the parties to this action pursuant to N.C. Gen. Stat. § 1-75.4

4. Venue is appropriate in Guilford County Superior Court pursuant to N.C. Gen. Stat. § 1-80.

## FACTS

5. Woodmont is the owner of the Woodmont Shopping Center located at 4653 West Market Street, Greensboro, Guilford County, North Carolina ("the Insured Property"), having purchased the Insured Property by Special Warranty Deed on or about September 20, 2019.

6. The Insured Property is a shopping center with retail space available for lease, and which has had, at all times relevant to this action, multiple commercial tenants.

7. The Insured Property is covered under a policy of insurance issued by Insurer to Anthony & Company, bearing Policy Number EPP 036 05 22, with a policy period of November 6, 2018 through November 6, 2019 ("the Policy").

8. All premiums for the Policy have been fully and timely paid to the Insurer.

9. Because of the age of the Insured Property, the Insurer required Woodmont, in order to secure coverage for the Insured Property, to pay a higher premium for property coverage.

- 2 -

10. Prior to Woodmont's purchase of the Insured Property, the Insurer was not denied any opportunity to inspect the insured location to properly underwrite its risk.

11. The Policy provides, among other things, as per the Commercial Property Coverage Part Declarations, the following policy limits:

a. Blanket Building coverage with a limit of $132,804,874;

b. Blanket Business Personal Property coverage with a limit of $600,000; and

c. Blanket Business Income with Extra Expense with a limit of $16,913,685.

12. The Policy provides that the Insurer will pay for direct loss to Covered Property at the Insured Property caused by or resulting from any Covered Cause of Loss.

13. On October 31, 2019, severe wind storms passed over the area of the Insured Property ("the Storm"), with local wind speeds at the location of the Insured Property of approximately sixty-six (66) miles per hour.

14. The Storm occurred just 41 days after purchase of the Insured Property and its addition to the Policy.

15. The high winds brought on by the Storm is a covered cause of loss.

16. Soon after the Storm, the Insured's tenants at the Insured Property reported significant water intrusion and requested the Insured perform repairs. The Insured's tenants reported that the water intrusion was new, and in locations not experienced until the Storm.

- 3 -

17. The Insured promptly reported the loss to the Insurer, providing a description of the property involved, how, when, and where the loss occurred, and took all reasonable steps available to them to protect the Insured Property from further damage ("the Claim").

18. The Insurer assigned claim no. 3454680 to the Claim.

19. On November 11, 2019, the Insurer inspected the Insured Property.

20. On November 20, 2019, an engineer customarily retained by the Insurer inspected the Insured Property.

21. On December 11, 2019, the Insurer provided a copy of a report prepared by the Insurer's engineer.

22. On January 17, 2020, the Insurer requested that its engineer again be given access to re-inspect the roof of the Insured Property on January 31, 2020, and the Insured timely agreed to the request.

23. Upon information and belief, the inspections of the Insurer and the Insurer's engineer were cursory, superficial, and incomplete, in that they were for the purpose of finding evidence to deny the Claim, rather than conducting a thorough investigation of the evidence presented by the Insured in seeking coverage under the Policy.

24. On February 24, 2020, the Insured timely submitted to the Insurer a signed sworn proof of loss in the amount of $2,148,788.50 in replacement cost value, including the estimate of Coastal Construction in that amount, within 60 days of the Insurer's request as required by the Policy. A true and accurate copy of the signed Sworn Proof of Loss is attached hereto as Exhibit A.

- 4 -

25. The Sworn Proof of Loss was comprehensive, completed, and notarized in full compliance with the Policy.

26. The Insurer did not reject the Sworn Proof of Loss based upon any contended inadequacy of the submissions in the Sworn Proof of Loss.

27. The Insured cooperated with the Insurer in its investigation of the Claim and the signed Sworn Proof of Loss regarding the Claim.

28. The Insurer failed to respond or give notice of its intentions within 30 days after it received the Sworn Proof of Loss pursuant to its obligations under the Policy.

29. On April 14, 2020, the engineer hired by the Insurer provided the Insurer with another supplemental report.

30. Without reserving any rights under the Policy, on April 20, 2020, the Insurer issued an untimely and complete denial of coverage for the Claim. A true and accurate copy of the April 20, 2020, denial of coverage letter is attached hereto as Exhibit B.

31. At all times, the Insured made itself and the Insured Property available and fully cooperated with the Insurer, including its representatives and agents, to inspect and investigate the damage caused by the Storm.

32. The Insured has complied with all conditions of the Policy with respect to the Claim.

33. The Insured has cooperated with the Insurer in the Insurer's investigation of the Claim.

- 5 -

34. The Insurer has a duty to act with due diligence in achieving a proper disposition on the Claim.

35. The Insurer failed to timely and reasonably provide coverage evaluations and notices of the same to its Insured.

36. At all times throughout the investigation of the Claim, the Insured complied as promptly as possible with every request made by the Insurer, and has otherwise fulfilled all conditions precedent and contractual obligations under the Policy prior to this lawsuit.

37. The Insurer knew that, in addition to the expenses incurred by the Insured in making temporary repairs and attempting to mitigate any further damage caused by the Storm, the Insured was also under significant economic pressure because of closures and limitations imposed by COVID-19 on the commercial tenants of the Insured Property and the need to minimize damage to the operations of the Insured's commercial tenants.

38. The Storm occurred on October 31, 2019, and the Insurer did not deny the Claim until April 20, 2020, approximately 172 days later.

39. Between the date of the February 24, 2020, Sworn Proof of Loss and the April 20, 2020, blanket denial of the Claim, the Insured was being hammered with issues and restrictions imposed on the Insured Property and its tenants because of COVID-19.

40. The Policy was issued in North Carolina for a North Carolina insured location and North Carolina law governs the interpretation of the Policy.

- 6 -

41. Under North Carolina law, all provisions in an insurance policy which extend coverage to the Insured must be construed liberally so as to afford coverage whenever possible by reasonable construction.

42. Under North Carolina law, when interpreting the exclusionary provisions of an insurance policy; exclusionary provisions are not favored and, if ambiguous, will be construed against the Insurer and in favor of the Insured.

43. The Claim is covered under the terms of the Policy.

**FIRST CLAIM FOR RELIEF – Declaratory Judgment**

44. The Insured realleges and incorporates by reference the preceding allegations as if fully set forth herein.

45. This action is initiated pursuant to Rule 57 of the North Carolina Rules of Civil Procedure and N.C. Gen. Stat. § 1-253, *et seq.*, the North Carolina Declaratory Judgment Act, seeking a declaration of the rights, obligations, and responsibilities of the parties under the Policy.

46. Under the Policy, the Insurer is obligated to reimburse the Insured or pay on the Insured's behalf for direct physical loss of or damage to the Insured Property insured by the Policy caused by or resulting from any covered cause of loss.

47. Further, under the Policy, the Insurer is obligated to reimburse the Insured or pay on the Insured's behalf for reasonable steps taken to protect the Insured Property from further damage following a loss.

48. The Storm resulted in damage to the Insured Property, and the damage caused by the Storm is a covered loss under the Policy.

- 7 -

49. The exclusions cited by the Insurer are not applicable to the damage caused by the Storm and covered under the Policy.

50. The Insured fulfilled its duty under the Policy in the event of a loss when it hired a contractor to perform emergency mitigation and remediation services for covered property.

51. The Insured is entitled to a declaration that the damages identified in the Sworn Proof of Loss for the Insured Property are covered under the Policy, and are not excluded.

### SECOND CLAIM FOR RELIEF – Breach of Contract

52. The Insured realleges and incorporates by reference the preceding allegations as if fully set forth herein.

53. The Policy is and was a valid and enforceable contract between the Insured and the Insurer.

54. The Insured performed all obligations imposed upon it by the Policy, including the payment of increased premiums due to the age of the Insured Property.

55. The Insurer breached the Policy by failing to provide the benefits, coverage, and payments due thereunder.

56. As a direct and proximately result of the Insurer's breach of the Policy, the Insured suffered and is entitled to recovery of the Insurer monetary damages in a principal amount equal to the sum set forth in the Proof of Loss, $2,148,538.50, or an amount to be determined through discovery and/or trial, plus consequential damages.

- 8 -

57. The Insured has also sustained and continues to sustain damages for loss of use caused by the Storm.

**THIRD CLAIM FOR RELIEF – Unfair and Deceptive Trade Practices**

58. The Insured realleges and incorporates by reference the preceding allegations as if fully set forth herein.

59. The Insurer is, and at all times relevant hereto, was engaged in the business of selling and writing insurance policies and adjusting claims thereunder, and, at all times alleged herein, its actions were in or affecting commerce within the State of North Carolina.

60. The Insurer engaged in unfair and deceptive acts and practices in investigating, adjusting, and settling claims brought under the Policy, including the Claim, as follows:

    a. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the Policy;

    b. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the Policy;

    c. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

    d. Failing to affirm or deny coverage of the Claim within a reasonable time after proof-of-loss statements have been completed;

- 9 -

e. Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

f. Delaying the investigation or payment of the Claim by requiring the Insured to submit a preliminary claim report and then requiring the subsequent submission of formal proof-of-loss forms, both of which contain substantially the same information; and

g. In other particulars to be adduced through further investigation, discovery, and/or at trial.

61. The above-described conduct of the Insurer, all in violation of N.C. Gen. Stat. § 58-63-15, was unfair, unscrupulous, immoral, and injurious to consumers, and therefore offended the public policy standards established by N.C. Gen. Stat. § 75-1.

62. As a proximate result of the conduct of the Insurer, it is obligated to pay the Insured's fees and costs associated with this action pursuant to N.C. Gen. Stat. § 75-16.1.

63. The acts and omissions of the Insurer were unfair and deceptive under N.C. Gen. Stat. § 75-1.1, and as a proximate result of said acts and omissions, the Insured suffered damages in an amount equal to the principal amount set forth in the Proof of Loss as well as consequential damages to be proven at trial, and in any event, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

64. The Insured is entitled to treble damages pursuant to N.C. Gen. Stat. § 75-16.

- 10 -

## FOURTH CLAIM FOR RELIEF – Bad Faith

65. The Insured realleges and incorporates by reference the preceding allegations as if fully set forth herein.

66. The Insurer's conduct, actions, omissions, and refusals to timely and promptly adjust and pay the Claim pursuant to the Sworn Proof of Loss constitutes bad faith in one or more of the following particulars:

a. The Insurer breached the covenant of good faith and fair dealing;

b. The Insurer charged the Insured an increased premium due to the age of the Insured Property with the intention, upon information and belief, to deny coverage for any claim of property damage to the Insured Property;

c. The Insurer demonstrated a willful, oppressive forestalling of payment in order to bring fiscal pressure to bear upon the Insured for the Insurer's own advantage and financial gain;

d. The Insurer misused its power and authority in such a way as to be tantamount to outrageous conduct;

e. The Insurer recklessly and wantonly disregarded the Insured's right as the insured under the Policy;

f. The Insurer failed in good faith to effectuate prompt, fair, and equitable settlement of the Claim after liability had become reasonably clear;

- 11 -

g. The Insurer denied payment for the Insured's loss after an unreasonable delay, without a valid basis under the contractual provisions of the Policy;

h. The Insurer acted in a manner outlined in the Insured's Third Claim for Relief;

i. In other particulars to be adduced through further investigation, discovery, and/or at trial.

67. The Insurer violated statutes preventing unfair claim settlement practices as set forth in N.C. Gen. Stat. § 58-63-15

68. The Insurer's conduct was willful, capricious, oppressive, and demonstrated a reckless indifference to the Insured's rights under the Policy.

69. As a result of the acts and omissions of the Insurer, the Insured sustained damages and losses and is entitled to recover punitive and compensatory damages in an amount to be proven at trial, but nevertheless in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

WHEREFORE, Plaintiff respectfully prays the Court that:

1. The Court enter a declaratory judgment that the Insured is entitled to coverage under the Policy for the Claim;

2. Plaintiff have and recover of the Insurer a sum equal to the principal amount set forth in the amount of the Sworn Proof of Loss for breach of contract;

- 12 -

3.   Plaintiff have and recover prejudgment interest from the date of breach;

4.   Plaintiff have and recover treble or punitive damages from the Insurer, at Plaintiff's election;

5.   The costs of this action, including reasonable attorneys' fees recoverable by law, be taxed against the Insurer; and

6.   Plaintiff have and recover such further and other relief that the Court deems just and proper.

This the 24 day of June, 2020.

BAILEY & DIXON, LLP

By: _____
David S. Coats, N.C. State Bar No. 16162
Email: dcoats@bdixon.com

By: _____
J.T. Crook, N.C. State Bar No. 35232
Email: jcrook@bdixon.com
Attorneys for Plaintiff
Post Office Box 1351
Raleigh, North Carolina 27602-1351
Telephone: (919) 828-0731
Facsimile: (919) 828-6592

- 13 -